Mr. Chip Heard 374 Springdale Marion, AR 72364
Dear Mr. Heard:
I am writing in response to your request for my opinion regarding application of the Arkansas Freedom of Information Act ("FOIA"), A.C.A.25-19-101 et seq, as amended by Act 1653 of 2001. You have submitted your requests pursuant to A.C.A. 25-19-105(c)(3)(B), which authorizes the custodian, requester, or subject of personnel or evaluation records to seek an opinion from the Attorney General.
You report that you are employed as a firefighter for the city of West Memphis and are seeking a promotion to the rank of lieutenant. According to your account, several members of the city council, which is charged with approving your promotion, have requested copies of all disciplinary actions initiated against you since 1990. Apparently this request is not supported by any formal council resolution. You further report:
 . . . I do not feel that the members should be allowed access to these copies in order to use them against me. Our promotional policy only states that only those disciplinary actions back one year from test date will be considered as part of the promotional scores.
My own inquiries reveal that only one council member has requested your records, although he may well have done so on behalf of certain colleagues as well as himself. The requester reportedly did not indicate whether he was basing the request on the FOIA or on a claim of entitlement to review them as a city official. On advice of the city's counsel, the custodian of the records is treating the request as controlled by the FOIA and is withholding disclosure pending the issuance of my opinion.
As an initial matter, I should address the possibility that the requester might be entitled to review your records based solely on the fact that he is a member of the city council reviewing your application for promotion. On various occasions, this office has noted that the FOIA is silent on the question of who may review personnel records by virtue of an official position. See, e.g., Ark. Ops. Att'y Gen. Nos. 96-386 and 89-330. As one recognized commentator on the FOIA has noted regarding whether a requesting official's position in itself warrants disclosure:
 Obviously, the issue becomes important when the documents would be exempt from disclosure under the act, since any citizen has a right of access to nonexempt records. . . . [S]ome officials may be able to obtain access to exempt records by statute, via their subpoena power, or in the course of their official duties.
John J. Watkins, The Arkansas Freedom of Information Act 78 (3d ed. 1998) (footnotes omitted).
Section 14-43-502 of the Code, which sets forth the powers of a council of a city of the first class — a category that includes West Memphis — at no point suggests that the council by ordinance or resolution might obtain documents otherwise exempt under the FOIA, much less that one or several members of the council might independently do so. However, as I noted in Ark. Op. Att'y Gen. No. 2000-283, cities are generally afforded relatively broad powers over municipal affairs:
 Cities are empowered to enact provisions concerning municipal affairs, provided that they do not conflict with state law. See A.C.A. §§ 14-43-601, -602 (cities can exercise legislative power over "municipal affairs"); 14-42-307 (cities can exercise all powers conferred by state law that are "not contrary" to state law); 14-54-101 (cities can exercise powers that are "not inconsistent" with the general laws of the state); 14-55-101 (cities can enact ordinances that are "not inconsistent with the laws of the state"); 14-42-502 (city councils in cities of the first class have legislative power granted by state law and "not prohibited by it"). "Municipal affairs" are defined as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government," except certain matters that are state affairs. See A.C.A. § 14-43-601.
Given these principles, it might well be that a city by formal enactment could dictate the disclosure of specified documents in order to provide background information germane to a promotion decision. Nevertheless, as I understand it, the city council has adopted no such enactment, and, by your report, the only authority pertinent to the issue provides "that only those disciplinary actions back one year from test date will be considered as part of the promotional scores." Under these assumed facts, I strongly doubt individual council members would be authorized to obtain otherwise exempt documents relating to incidents dating back more than one year merely by virtue of their status as council members.
With respect to documents falling outside the one-year period of reportedly authorized access, the question thus becomes whether the requester, as a member of the public, should be denied access to disciplinary records because they fall under some exemption set forth in the FOIA. In my opinion, any records relating to disciplinary actions against you clearly qualify as "employee evaluation or job performance records," which the FOIA declares releasable only under the following three conditions:
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
The FOIA does not define the phrase "employee evaluation or job performance record," nor have the courts found occasion to do so. The Attorney General has consistently taken the general position that records relating to an employee's performance or lack of performance on the job are properly classified as job performance records under the FOIA. See,e.g., Ark. Ops. Att'y Gen. Nos. 2002-047; 2001-203; 96-132; 91-324. In addition, this office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-203; 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303.
The questions of whether there has been a final administrative resolution of a termination or suspension and of whether the requested records formed a basis for such action are clearly ones of fact that the custodian should readily be able to answer. If she answers them in the affirmative, and further if she determines that there is a compelling public interest in disclosing the records, she should produce them for inspection and photocopying. Conversely, if any given disciplinary action has resulted in neither suspension nor termination, the custodian should withhold the record from the public, including members of the city council, subject only to the qualification that the council may have been authorized to review all disciplinary records dating back one year.[1]
Moreover, as previously noted, the custodian should disclose records relating to fully resolved episodes that resulted in suspension or termination only if she determines that the disclosure would serve a compelling public interest.
The FOIA at no point defines the phrase "compelling public interest." However, Professor Watkins has provided some guidelines for making the factual determination whether such an interest exists. He states, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Watkins, supra at 146. He further observes: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. Elaborating on this point, Watkins remarks: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 147. Professor Watkins additionally notes that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 146-47 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
The custodian should further review any document she decides contains disclosable information to determine whether it contains specific information that is exempt from disclosure under any of various other exemptions. If so, this information should be redacted from the record prior to its release. For example, she should redact any social security numbers contained in the documents. See, e.g., Op. Att'y Gen. No.99-011, citing 5 U.S.C. § 552a (the "Federal Privacy Act"). She should likewise redact unlisted telephone numbers. See, e.g., Op. Att'y Gen. No. 99-054. More generally, where the facts indicate that a particular individual has a heightened privacy interest, the home address and listed telephone number should be redacted as well. See Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998); Ops. Att'y Gen. Nos. 2001-123; 99-054. Some records may further contain references to other employees, in which case she will need to determine whether these references are independently exempt from disclosure.
Finally, records that are otherwise releasable may be withheld from release if they contain information in which an individual has a constitutional privacy interest. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. See McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. If the custodian of the records determines factually that any information in the requested records meets the three prongs of the test laid out by theMcCambridge court, she must then consider whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs any privacy interest in their nondisclosure. Again, this determination will be a factual one, based upon the information available to the custodian.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] I offer this possible qualification only because you suggest in your request that the council indeed has such authority. Only a finder of fact could determine whether you are correct in that assumption.